

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 11 2013

JULIA C. DUDLEY, CLERK
BY: /s/
  DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| WILLIAM GREGORY BATTEN, | Civil Action No. 7:12cv00547 |
| Petitioner, | |
| v. | § 2254 MEMORANDUM OPINION |
| HAROLD W. CLARKE, | |
| | By: Samuel G. Wilson |
| Respondent. | United States District Judge |

William Gregory Batten, a Virginia inmate proceeding *pro se*, brings this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction and sentence in the Circuit Court of Madison County, Virginia, for attempting to obtain money by false pretenses from his insurer in violation of Va. Code § 18.2-178. Batten raises six claims: four ineffective-assistance-of-counsel claims, a prosecutorial misconduct claim, and a claim that the trial court abused its discretion. The Virginia Supreme Court found that the four ineffective-assistance claims failed on their merits under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984) and that Batten procedurally defaulted his prosecutorial-misconduct and abuse-of-discretion claims under <u>Slayton v. Parrigan</u>, 215 Va. 27 (1974), and therefore dismissed Batten's petition. This court finds that the Virginia Supreme Court's adjudication of Batten's ineffective-assistance claims was not contrary to, or an unreasonable application of, clearly established federal law, and did not result in a decision that was based on an unreasonable determination of the facts. The court also finds that Batten procedurally defaulted his remaining claims pursuant to an adequate and independent state procedural rule. Accordingly, the court grants the respondent's motion and dismisses Batten's petition.

I.

Between 1999 and 2002, Batten sought to recover from his insurer, Northern Neck Insurance Company ("Northern Neck"), for various losses at his primary residence in Madison County, Virginia. On December 30, 2002, Madison County Sheriff's Lieutenant Donald F. Michael, Jr., encountered Batten while executing a search warrant at that residence. Pursuant to that warrant, authorities seized forty-seven firearms and compiled an inventory of those firearms, listing them by make, model, caliber, and serial number. Those firearms remained in the possession of the Madison County Sheriff's Office.

Years later, in June of 2008, Batten reported to the Bedford County Sheriff's Office that he had been the victim of a burglary at his secondary residence in Bedford County. Detective Wendy Finch met with Batten and compiled a list of items Batten claimed were stolen. Trial tr. 151–58. Batten later added items to this list. Among other items, Batten claimed the loss of seven firearms. Batten filed a claim for his losses with his insurer at the time, Rockingham Mutual Insurance Company ("Rockingham Mutual"), and submitted to an examination under oath in connection with the claims investigation. Trial tr. 141.

A grand jury returned five felony indictments against Batten arising out of his insurance claims: two counts of perjury, two counts of attempted insurance fraud, and one count of insurance fraud. The Circuit Court of Madison County, Virginia, consolidated for trial one count of attempting to obtain money by false pretenses from Rockingham Mutual in 2008 and one count of obtaining money by false pretenses from Northern Neck Insurance Company between 1999 and 2002.[1] At trial, the Commonwealth contended that some of the firearms Batten claimed were stolen in 2008 were the same firearms that law enforcement personnel seized in

---

[1] The charge of obtaining money by false pretenses from Northern Neck stemmed from an insurance claim filed for property damaged in a 1999 fire.

2

2002. Rockingham Mutual claims-investigator Matthew Csady testified that Batten provided one receipt for a Remington "Model 597 Magnum .22 W.M.R. caliber rifle" and four manuals for other firearms he had reported stolen during the 2008 burglary. The Model 597 receipt had a large UPC bar code and contained the number "2913182M." Batten also supplied user manuals for a Browning Semi-Automatic Rifle "300 win cal," an Encore 50 caliber muzzleloader rifle, a Marlin Model 336C 30/30 lever-action rifle, and a Sturm Ruger M-77 Mark II bolt-action rifle. Later in the trial, Lieutenant Michael testified about the 2002 search of Batten's Madison County residence. Michael identified the items recovered during that search, among them a Remington 597 with the serial number "2913182M," which matched the serial number of the Remington 597 reported stolen in 2008. According to the evidence, that particular firearm in fact had remained in the Madison County Sheriff's Office since 2002.

Batten's son, Randy Batten, testified for the defense. Defense counsel showed Randy Batten the muzzle-loader and shotgun that were seized during the 2002 search. Randy Batten claimed the two firearms were different from the firearms stolen from his father's Bedford County residence in 2008. During the Commonwealth's cross-examination, Randy Batten testified that the firearms stolen during the 2008 Bedford County break-in were his firearms and that he was not "holding them" for his father. Trial tr. 201. After the defense rested, the Commonwealth called in rebuttal witness Dennis Dodson of the Virginia State Police. Dodson testified that he interviewed Batten's son on July 21, 2009. Trial tr. 205. According to Dodson, during that interview, Randy Batten had said that his father did not have any firearms stored at the Bedford County residence, that he was not holding any firearms for his father, and that no firearms were stolen in the break-in. Trial tr. 206. Circumstantial evidence in the form of user manuals also corroborated the Commonwealth's claim that authorities had in fact seized in 2002

3

various firearms Batten alleged were stolen in 2008. William Batten did not testify during the trial.

In closing argument, Batten's counsel maintained that one of the shotguns seized in 2002 was a different model number (a model 120) from the shotgun Batten claimed to have been stolen in 2008. Then, during the Commonwealth's rebuttal closing, the following exchange took place:

> COMMONWEALTH'S ATTORNEY: . . . . There's no evidence before you to consider, so don't go out g[r]asping for things on there and he talks about the scopes on the insurance inventory. When you look at these guns, there are some scopes down below but none of these guns here are listed with scopes on them, so that—don't let that red herring throw you off either, as well, and the model 12, that's what Mr. Batten wrote down, a Winchester Model 12, it's a .12 gauge. When you look at the sheriff's office, they did it accurately and did it right. There is no such thing as a model 12. They put down another model number 120 .12 gauge Winchester.
>
> BATTEN'S ATTORNEY: Objection, Your Honor, not in evidence.
>
> THE COURT: I'll let the jury decide what the evidence is.
>
> BATTEN'S ATTORNEY: Well, I mean, he's saying there is no such thing.
>
> THE COURT: Well,--
>
> BATTEN'S ATTORNEY: I don't recall any evidence saying there's no such thing as a Model 12.
>
> THE COURT: I'll sustain the objection to that form of the argument. There certainly was no evidence to that—the jury will disregard that.
>
> COMMONWEALTH'S ATTORNEY: If any of you are familiar with guns and Remington you'll know—you'll know what models are proper or not. Don't let that fool you, ladies and gentlemen.

Trial tr. 247–48.

After that exchange, the trial court explained to the jury in detail the procedures they should follow during their deliberations, the jury retired to deliberate, and Batten's counsel argued as follows:

> During [the prosecutor's] argument there in rebuttal, he clearly tried to convey the message that a model 12 Winchester does not exist, and when I objected to that that it was not a fact in evidence, the Court sustained my objection but he went on to say, well, if you—if any of you all know guns—two of the jurors in the back were kind of nodding their heads and they're going, yeah, we know guns. Your Honor, we've got evidence that there is such a thing as a Winchester Model 12. I don't want two jurors back there, you know, taking things that are not in evidence and bringing their own experience in to say there's no such thing as a model 12 when there—when there clearly is. I think it was clearly an inappropriate comment on the part of [the prosecutor], and I—you know, I'm asking that the jury be given a caution not to consider those kind of comments. I think it—I think it—and it was very prejudicial to try to persuade the jury that there was no such thing as this type of gun, and therefore, is—that's—that's part of a false claim and by rewording it and saying, well, use your own experience. If any of you know about guns, you can bring it in. What they know about guns is not evidence, Your Honor, and it's just clearly a highly prejudicial comment that was—that's unsupported by the facts outside of the evidence of this case, so—
>
> THE COURT: All right. Well, [counsel], I sustained your objection because when I reflected on it I believed you were correct, and I found and noted that there was no such evidence and so told the jury. Now, your—your further comment that [the prosecutor] went on to use other words, no objection was made so there was nothing for the Court to rule on at that point. Secondly, your statement that you, when he said those words, saw jurors nodding their heads or indicating by facial gestures something is not anything that the Court either observed or can take into account or make a ruling on. In other words, we ruled in your favor appropriately on that point, but the Court is in a position now where it would not be appropriate for me to bring the jury back and tell them anything further at this point. I've already ruled exactly as you requested, so that's my response to what you just said.
>
> BATTEN'S ATTORNEY: Yes, sir.

Trial tr. 253–54.

The jury found Batten guilty of attempting to obtain money by false pretenses from Rockingham Mutual, but not guilty of obtaining money by false pretenses from Northern Neck. Months later, at sentencing, Batten's counsel moved for a mistrial "on the basis of an

improper argument" by the Commonwealth's Attorney in closing at trial. The trial court denied the motion. Before sentencing, the Commonwealth and Batten entered into a plea agreement disposing of the remaining charges. Under that agreement, Batten pled to one count of perjury stemming from his false statements concerning his financial situation, made under oath during a pre-trial hearing to determine whether Batten qualified for court-appointed counsel.[2] Ultimately, the court sentenced Batten to ten years' imprisonment on the one count of attempting to obtain money by false pretenses, to run concurrently with two years' imprisonment it imposed on the perjury count.[3]

Batten appealed to the Virginia Court of Appeals, arguing that the trial court erred in refusing to give a cautionary instruction in response to the improper argument by the Commonwealth in closing, and erred in refusing to grant Batten's motion at the close of the Commonwealth's case to strike the evidence as insufficient. Batten also requested that if the Court of Appeals found the mistrial motion to be untimely, that it review the claim under Virginia's ends-of-justice exception to the contemporaneous objection rule, Rule 5A:18.[4] The Court of Appeals found Batten's objection and motion for mistrial to be untimely and therefore not properly preserved for appeal. In reaching that conclusion it noted that although Rule 5A:18 allows exceptions for good cause or to attain the ends-of-

---

[2] The court accepted Batten's plea following a thorough plea colloquy. Though the plea was entered well after the jury had found Batten guilty of attempted insurance fraud, Batten emphasized that he was "very satisfied" with the services of his attorney.

[3] The court also sentenced Batten to a consecutive four years' imprisonment for violating the terms of a suspended sentence it imposed in April 2, 2003, following a conviction for possession with the intent to distribute.

[4] Rule 5A:18 provides, in pertinent part,
No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice. A mere statement that the judgment or award is contrary to the law and the evidence is not sufficient to preserve the issue for appellate review.

justice, Batten did not advance any argument as to why that the court should invoke those exceptions.[5] It also found the evidence at trial to be competent, not inherently incredible, and sufficient to prove beyond a reasonable doubt that Batten was guilty of attempting to defraud Rockingham Mutual.

Batten appealed the Court of Appeals' decision to the Virginia Supreme Court, arguing that the Court of Appeals erred in holding that he had not preserved the issues for appeal and had erred in failing to invoke the ends-of-justice exception to the contemporaneous objection rule. Specifically, Batten maintained that he was "the victim of a clear miscarriage of justice" when the Commonwealth argued facts not in evidence (that there is no such thing as a Winchester 12 model) and two jurors allegedly nodded in agreement with the Commonwealth's argument. The Virginia Supreme Court refused Batten's petition for appeal.[6] Batten v. Virginia, No. 110161 (Va. May 6, 2011), ECF No. 8-4.

---

[5] In making its ruling, the Court of Appeals relied on Humbert v. Commonwealth, 29 Va. App. 783, 791 (1999):
> Where an accused alleged that the trial court has made improper remarks in the presence of the jury but fails contemporaneously to object, request a cautionary instruction or move for a mistrial, he waives the right to challenge those remarks on appeal. "A motion for a mistrial is untimely and properly refused when it is made after the jury has retired."

Id. (quoting Cheng v. Commonwealth, 240 Va. 26, 39 (1990). And although Rule 5A:18 allows exceptions for good cause or to meet the ends of justice, Batten did not argue as to why the court should invoke those exceptions and the appellate court stated that it is not required to consider a miscarriage-of-justice argument *sua sponte*. See Redman v. Commonwealth, 25 Va. App. 215, 221 (1997) ("In order to avail oneself of the exception, a defendant must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage of justice might have occurred.").

[6] A denial of appeal by the Virginia Supreme Court is "no less an 'adjudication' of the merits of the claim and must be reviewed under the deferential provisions of § 2254(d)(1)." Bell v. Jarvis, 236 F.3d 149, 158 (4th Cir. 2000). "In such cases, [courts] conduct an independent examination of the record and the clearly established Supreme Court law," but must still proceed deferentially and "confine [their] review to whether the [state] court's determination 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Id. (citations omitted) (quoting Bacon v. Lee, 225 F.3d 470, 478 (4th Cir. 2000)).

Batten, in turn, filed a petition for writ of habeas corpus in the Supreme Court of Virginia, attacking the validity of his conviction on the following grounds: (1) counsel was ineffective for refusing to permit Batten to testify on his own behalf;[7] (2) counsel was ineffective for failing to subpoena exculpatory evidence, namely material witnesses and available documentation;[8] (3) the prosecutor knowingly made deliberately false statements to the jury in closing argument;[9] (4) the trial court abused its discretion in not providing Batten's defense with an opportunity to rebut the prosecutor's closing argument that there is no such thing as a Winchester model 12;[10] (5) counsel was ineffective for failing to move the trial court for a mental-health evaluation, due to Batten's documented post-traumatic stress disorder ("PTSD");[11] and (6) counsel was ineffective on appeal for failing to assert

---

[7] Batten maintains that counsel's "decision to preclude [him] from testifying at his own criminal trial . . . proved fatal and prejudiced [his] defense beyond salvage." Pet. 7, ECF No. 1. Had he testified in his own defense rather than allowing counsel to "convince[]" him otherwise on the "assurance that the charges would be dismissed or greatly reduced if [he] cooperated," Batten maintains that his testimony would reveal him as the victim of a home break-in and that he did have a Winchester model 12 shotgun stolen from that home. Id. at 5–6.

[8] In both his state and federal habeas petitions, Batten maintains that he advised his trial defense counsel "that he would need a vital witness to further support the fact that he was not making a false claim against his insurance company." In his petition, Batten identifies his former girlfriend, Diane St. Clair, who, if called, would have offered testimony that she took at least four firearms to Batten's Bedford County home, including a Winchester model 12 shotgun, and that she and others knew Batten to keep firearms at his secondary residence. Batten offers the failure to call St. Clair as a witness as evidence of counsel's deficient performance and states that "there is no cogent tactical or other consideration to justify the failure" to present this "exculpatory evidence." Pet. 10, ECF No. 1.

[9] Batten contends that the prosecutor falsely informed the jury that the Remington model 12 shotgun (which Batten had claimed was missing) was not a shotgun that Remington produced, when in fact Remington does make a model 12 S shotgun that is manufactured by Winchester, and that he was further prejudiced because two jurors nodded in agreement with this allegedly false statement.

[10] Batten contends that the trial court failed to take any corrective action to assure the jurors that his claim was in fact for a Winchester model 12 shotgun rather than a Remington model 12 shotgun.

[11] Batten asserts that his counsel was aware of his past diagnosis of PTSD, and that counsel's failure to move the court for an updated mental-health evaluation meant the trial court did not have the opportunity to consider whether Batten suffered from a diminished capacity or have the opportunity to "protect [his] . . . interest from being wrongfully convicted of an offense for which [he] may have no control over." Batten goes on to assert that since his trial was before a jury, both the trial court and defense counsel needed to know if he was "subject to a 'quick temper,' 'easy startle responses,'" and if there was a need for medication that would "work to maintain a demeanor devoid of depression." Pet. 18, ECF No. 1. Batten also maintains that his condition rendered him unable to adequately consult or aid in his defense.

better claims in the petition for appeal.[12] The Supreme Court of Virginia found that Batten could not demonstrate that his counsel's performance was deficient or that there was a reasonable probability that, but for counsel's alleged errors, the result of his trial would have been different, as Strickland v. Washington requires. Consequently, it dismissed Batten's ineffective-assistance claims. It also found that Batten had not raised his other claims either at trial or on direct appeal and, therefore, had procedurally defaulted them.

Batten's current federal habeas petition reiterates the claims in his state habeas petition. The respondent has moved to dismiss, and the case is ripe for adjudication.

## II.

Batten claims that his counsel was ineffective in failing to permit Batten to testify on his own behalf, failing to subpoena exculpatory evidence, failing to move the trial court for a mental-health evaluation, and failing "to assert better claims in the petition for appeal." The court finds that the state court's adjudication of these claims was not contrary to clearly established federal law or based on an unreasonable determination of the facts. Accordingly, the court dismisses the claims.

Batten's federal habeas petition is governed by 28 U.S.C. § 2254 and Chapter 154 of the Antiterrorism and Effective Death Penalty Act, Pub.L. No. 104–132, 110 Stat. 1214, 28 U.S.C. §§ 2261–66 ("AEDPA"). This "federal habeas scheme leaves primary responsibility with the state courts." Cullen v. Pinholster, 131 S. Ct. 1388, 1399 (2011) (quoting Woodford v. Visciotti, 537 U.S. 19, 27 (2002)) (internal quotation marks omitted). Consequently, in almost all circumstances, § 2254 petitioners must exhaust all available state-court remedies before seeking relief in federal court. See 28 U.S.C. § 2254(b). And

---

[12] Specifically, Batten argues that on direct appeal, his counsel "set forth a routine petition . . . devoid of crucial challenges to the state's trial [c]ourt errors." Pet. 20, ECF No. 1.

when a state court has adjudicated a petitioner's habeas claims on the merits, AEDPA requires the federal court to defer to the state court's decision:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d). The state court's factual determinations are also "presumed to be correct," and the petitioner bears the burden of rebutting that presumption by "clear and convincing evidence." § 2254(e)(1).

Under these standards, a state court's adjudication is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court of the United States] on a question of law or if the state court decides a case differently than the [Supreme Court of the United States] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412–13 (2000). A state court's decision unreasonably applies clearly established federal law "if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts." Id. at 413. It is insufficient that a state court applied federal law incorrectly—a federal habeas court may grant relief only if it determines that the state court unreasonably applied federal law. Id. at 411. In making that determination, "a habeas court must determine what arguments or theories could have supported the state court's decision; and then it must ask whether it is possible fair minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court]." Harrington v. Richter, 131 S. Ct. 770, 786 (2011).

10

Section 2254(d) review, therefore, is limited to the record that was before the state court. Pinholster, 131 S. Ct. at 1398.

### A.

Batten contends that his counsel was ineffective for refusing to permit Batten to testify on his own behalf. The court finds that the Virginia Supreme Court reasonably applied controlling federal law to facts it reasonably determined. Accordingly, the court dismisses the claim.

To demonstrate ineffective assistance, Batten must show that his counsel's performance was deficient and that the deficiency prejudiced his defense. Strickland, 466 U.S. at 687–91. To establish deficient performance, Batten must demonstrate that counsel's representation "fell below an objective standard of reasonableness," and he must overcome the strong presumption that counsel acted reasonably and well within the "wide latitude counsel must have in making tactical decisions." Id. at 688–89. To establish prejudice to his defense, Batten must demonstrate that, but for his attorney's alleged errors, there is a reasonable probability that the outcome of the trial would have been different. Id. at 694. A reasonable probability is a "substantial" probability, not just a "conceivable" likelihood of a different result. Harrington, 131 S. Ct. at 792.

When evaluating claims of ineffective assistance of counsel, a federal habeas court may grant relief only if the state-court decision unreasonably applied the more general standard for ineffective assistance established by Strickland. "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Knowles v. Mirzayance, 556 U.S. 111, 123

11

(2009). Therefore, the court's review of a Strickland claim under § 2254(d) is "doubly deferential." Id.

Here, Batten claims that his counsel was ineffective for "refusing to permit him to testify in his defense." Batten contends that he expressed his willingness to testify, but counsel convinced him not to do so through assurances that if he cooperated, the court would dismiss or reduce the charges against him. Pet. 6, ECF No. 1. Batten claims that, had he testified, he would have confirmed the break-in at his Bedford County home and the theft of a Model 12 Winchester shotgun, and that without this testimony, the jury was left with the impression that Batten was untruthful and had concealed facts in order to commit insurance fraud. Id. The Virginia Supreme Court considered this claim on the merits and found that the claim did not satisfy either prong of Strickland, because Batten admitted that counsel "convinced" him not to testify rather than "refused" to allow him to testify. The distinction is important. Batten had the right to choose whether he would testify or not testify. Counsel's role was to consider the legal ramifications and tactical considerations and advise Batten accordingly, and from Batten's admission that is precisely what counsel did. As the Virginia Supreme Court noted, "counsel may reasonably have believed calling [Batten] to testify and exposing him to cross-examination would not have been beneficial to the defense." Batten v. Dep't of Corr., No. 120723, slip op. at 2 (Va. Oct. 11, 2012), ECF No. 8-9. Under the circumstances, the court finds that Virginia Supreme Court's adjudication of the claim was not contrary to, or an unreasonable application of clearly established federal law, and did not result in a decision that was based on an unreasonable determination of the facts. Accordingly, the court dismisses the claim.

## B.

Batten claims that his counsel performed deficiently in failing to subpoena Batten's former girlfriend, Diane St. Clair, as a witness. According to Batten, he informed counsel that St. Clair would testify that she delivered four firearms, including a Model 12 shotgun, to Batten's residence prior to the break-in. The Virginia Supreme Court noted that the state police had prepared a report of a January 2009 interview they had conducted with St. Clair in connection with the investigation into Batten's insurance claims. In the report, St. Clair described taking firearms to Batten's Bedford County home after her relationship with Batten ended. That report and the rest of the record showed that St. Clair did not mention the number of firearms she had taken to Batten's home in Bedford County, did not acknowledge the existence of a Model 12 shotgun, and did not identify any specific firearms. Instead, St. Clair simply described the firearms as "old" and said that one used black powder. In any event, St. Clair's purported testimony seems inconsistent with Randy's claim that the stolen firearms belonged to him and not to his father. The Virginia Supreme Court found that Batten had failed to demonstrate either deficient performance or prejudice under <u>Strickland</u>. Under the circumstances, and viewing the question through AEDPA's doubly deferential lens, the court concludes that the Supreme Court of Virginia's adjudication of the claim did not result in a decision that was contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts. Accordingly, the court dismisses the claim.

## C.

Batten claims that his counsel performed deficiently in failing to move the trial court for a mental-health evaluation in light of an earlier diagnosis that Batten suffered from

PTSD. Batten contends that his counsel's failure to seek an updated mental-health evaluation prevented the trial court from determining whether he suffered from diminished capacity to "protect[] [himself] . . . from being wrongfully convicted of an offense over which he may have had no control." Pet. 18, ECF No. 1. Id. Batten also maintains that his PTSD rendered him unable to adequately consult and aid in his defense and that a proper evaluation would have revealed that he required medication. Id. The Virginia Supreme Court found that the claim failed to satisfy either of Strickland's prongs. To the extent that Batten alleged that a mental-health evaluation would reveal his diminished capacity, the Virginia Supreme Court noted that Virginia law does not recognize diminished capacity as a defense. Additionally, that court concluded that the record did not support a claim that Batten was insane at the time of the offense, that his PTSD caused him to misapprehend the nature of his actions or fail to understand that his actions were wrong, or that he was incompetent to stand trial or unable to assist in his defense.

On the question of sanity the Virginia Supreme Court found that the record, including the trial transcript, demonstrated that Batten filed an insurance claim and was able to detail the items he asserted were missing and to participate in an examination under oath with a Rockingham Mutual agent. And on the question of competency it found that the record, including the trial transcript, demonstrated that Batten was able to adequately and appropriately respond to the trial court's questioning and that he understood the charges against him, discussed the charges with his attorney, entered his plea voluntarily, and chose to be tried by a jury. Batten, No. 120723, slip op. at 4–5, ECF No. 8-9. Indeed, the record reflects considerable interaction between the trial court and Batten on matters touching on Batten's competency immediately before trial, and that court—which was uniquely

14

positioned to make informed judgments—proceeded to trial. Under the circumstances, the Virginia Supreme Court reasonably applied Strickland to facts it reasonably determined, in concluding that Batten had failed to show that counsel's performance was deficient or that there was a reasonable probability of a different result. Accordingly, the court dismisses the claim.

### D.

Batten claims that his counsel performed deficiently on appeal in failing to assert "better claims in the petition for appeal thus possibly causing [him] to be barred under Virginia's contemporaneous objection rule." According to Batten, his counsel "set forth a routine petition . . . devoid of crucial challenges to the state's trial [c]ourt errors." Batten does not specify the "crucial challenges" that his counsel failed to mount in either his petition to the Virginia Supreme Court or to this court. The Virginia Supreme Court found that he had failed to satisfy either of Strickland's prongs. In reaching this conclusion, it found that Batten had failed to show that appellate counsel had failed to perform in accordance with the considerable discretion accorded appellate counsel under Jones v. Barnes, 463 U.S. 745, 751–52 (1983) (holding that the selection of issues to address on appeal is left to the discretion of appellate counsel and that counsel need not address every possible issue on appeal). Batten, No. 120723, slip op. at 6, ECF No. 8-9. The Virginia Supreme Court reasonably applied Strickland to facts it reasonably determined, finding that Batten did not meet his burden to show counsel's performance was deficient or that there was a reasonable probability of a different result. Accordingly, the court dismisses the claim.

## III.

Batten claims that the prosecution engaged in misconduct by making deliberately false statements to the jury during closing argument and that the trial court "abused its discretion in not providing [Batten's] defense with an opportunity to [rebut] the trial court prosecutor's false statement with material evidence that was available in the court room." The Virginia Supreme Court dismissed Batten's claim as procedurally defaulted under Slayton v. Parrigan, 215 Va. 27 (1974), because Batten could, but failed to, raise the claims at trial or preserve them for direct appeal. This court finds that Slayton is an independent and adequate state procedural rule that bars federal habeas review unless a showing of cause and prejudice or a miscarriage of justice excuses the procedural default. Because Batten does not demonstrate cause and prejudice or a miscarriage of justice to excuse the default, the court dismisses his prosecutorial-misconduct and abuse-of-discretion claims.

A claim is defaulted where the state court expressly finds that review is barred by an independent and adequate state procedural rule. Fisher v. Angelone, 163 F.3d 835, 844 (4th Cir. 1998); see also Lambrix v. Singletary, 520 U.S. 518, 523 (1997). Whether a rule is independent and adequate is a question of federal law. Henry v. Mississippi, 379 U.S. 443, 447 (1965). "A state procedural rule is adequate if it is regularly or consistently applied by the state courts, Johnson v. Mississippi, 486 U.S. 578, 587 (1988), and it is independent if it does not depend on a federal constitutional ruling, Ake v. Oklahoma, 470 U.S. 68, 75 (1985)." McNeill v. Polk, 476 F.3d 206, 211 (4th Cir. 2007). Therefore, a violation of "firmly established and regularly followed state rules" is adequate to foreclose review. Lee v. Kemna, 534 U.S. 362, 375 (2002). The Fourth Circuit has recognized Slayton as an independent and adequate procedural rule that renders the claim procedurally defaulted in

this court. See Vinson v. True, 436 F.3d 412, 417 (4th Cir. 2006); see also Wright v. Angelone, 151 F.3d 151, 159–60 (4th Cir. 1998); Mu'min v. Pruett, 125 F.3d 192, 196 (4th Cir. 1997); Bennett v. Angelone, 92 F.3d 1336, 1343 (4th Cir. 1996); Spencer v. Murray, 18 F.3d 229, 232 (4th Cir. 1994).

However, a state prisoner can obtain federal habeas review of a procedurally defaulted claim if he shows either (1) cause and prejudice or (2) a miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991). To show cause, a petitioner must demonstrate that there were "objective factors," external to his defense, which impeded him from raising his claim at an earlier stage. Murray v. Carrier, 477 U.S. 478, 488 (1986). To show prejudice, a petitioner must show that the alleged constitutional violation worked to his actual and substantial disadvantage, infecting his entire trial with error of a constitutional magnitude. Id. at 488. The "miscarriage of justice" exception is a narrow exception to the cause requirement. A habeas petitioner falls within this narrow exception if he can demonstrate that a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense. Id. at 496. In this case, nothing in the record supports a claim of actual innocence, and Batten offers nothing else to excuse his procedural default. Accordingly, the court dismisses Batten's prosecutorial-misconduct and abuse-of-discretion claims as procedurally defaulted.

## IV.

For the above-stated reasons, the court grants the respondent's motion and dismisses Batten's habeas petition.

**ENTER**: June 11, 2013.

UNITED STATES DISTRICT JUDGE